FILED

2026 Jun-22  PM 01:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**CORION LESHON MOORE,**
        Petitioner,

**v.**

**UNITED STATES OF AMERICA,**
        Respondent.

**Case No. 4:23-cv-8023**
(***Related Case No. 4:18-cr-21***)

## MEMORANDUM OPINION

Corion Leshon Moore moves to vacate, set aside, or otherwise correct his sentence under 28 U.S.C. § 2255. (Doc. 1). Moore also moves to urge judgment (doc. 25). For the reasons stated within, the court will **DENY** Moore's motion to vacate, set aside, or otherwise correct his sentence (doc. 1) and **DISMISS** this case **WITH PREJUDICE**. The court will **DENY AS MOOT** Moore's motion to urge judgment (doc. 25).

## BACKGROUND

In January 2018, Moore was indicted on four counts. (Doc. 1 in Case No. 4:18-cr-21-CLM-SGC). Count 1 alleged that in November 2016 Moore unlawfully distributed a mixture and substance containing a detectable amount of methamphetamine. (*Id.*, p. 1). Count 2 alleged that on December 7, 2016, Moore again unlawfully distributed a mixture and substance containing a detectable amount of methamphetamine. (*Id.*, pp. 1–2). Count 3 alleged that on December 8, 2016, Moore unlawfully possessed with the intent to distribute 5 grams or more of methamphetamine, a mixture and substance containing a detectable amount of cocaine base, a mixture and substance containing a detectable amount of cocaine hydrochloride, and a mixture and substance containing a detectable amount of heroin. (*Id.*, p. 2). And Count 4 alleged that Moore knowingly possessed a firearm in violation of 18 U.S.C. § 922(g)(1) after being convicted of "a crime punishable by a term of imprisonment exceeding one year." (*Id.*, pp. 3–4).

1. *Pretrial proceedings before Judge Bowdre*: Moore's criminal case was originally assigned to Judge Karon Bowdre, and at Moore's initial appearance, the court appointed Attorney Bill Broome to represent Moore. Soon after his initial appearance, Moore filed a *pro se* motion to compel the Government to disclose the identity of its confidential informant. (Doc. 5 in Case No. 4:18-cr-21-CLM-SGC). The court struck Moore's motion because it was not filed by his counsel of record. (Doc. 6 in Case No. 4:18-cr-21-CLM-SGC).

Soon after, Attorney Susan James filed a notice of appearance on behalf of Moore, and the court granted Broome's motion to withdraw as attorney. (Docs. 8, 11, & 12 in Case No. 4:18-cr-21-CLM-SGC). James then filed a motion for leave to file a motion to suppress out of time and continue trial. (Doc. 17 in Case No. 4:18-cr-21-CLM-SGC). Judge Bowdre granted the motion and scheduled a motion hearing to address Moore's forthcoming motion to suppress. (Doc. 18 in Case No. 4:18-cr-21-CLM-SGC). Before the scheduled hearing, Moore filed two motions. (Docs. 19, 21, & 22 in Case No. 4:18-cr-21-CLM-SGC).[1] Moore first moved to suppress any items seized or statements made during a search of Moore's residence on December 8, 2016. (Doc. 21 in Case No. 4:18-cr-21-CLM-SGC). According to Moore, the court should suppress these items and statements because (a) the confidential informant's information wasn't reliable, and (b) the only substance identified in the warrant was methamphetamine but officers also seized heroin, cocaine, marijuana, crack cocaine, and firearms. (*Id.*, pp. 4–6). Moore's second motion asked the court to compel the Government to disclose the identity of the confidential informant whose information led to the charges in the indictment. (Doc. 22 in Case No. 4:18-cr-21-CLM-SGC).

After the motion hearing, Judge Bowdre denied Moore's motion for disclosure of the confidential informant's identity without prejudice to Moore's right to re-raise the motion later. (Doc. 28 in Case No. 4:18-cr-21-CLM-SGC). Judge Bowdre also denied Moore's motion to suppress based on the parties' arguments at the suppression hearing and her review of the search warrant, including its application and affidavit. (*See* Doc. 29 in Case No. 4:18-cr-21-CLM-SGC).

---

[1] Docs. 19 and 21 were duplicative, so Judge Bowdre denied Doc. 19 as moot. (*See* Doc. 27 in Case No. 4:18-cr-21-CLM-SGC).

But Judge Bowdre allowed Moore to file a supplemental motion to suppress related to his contention at the suppression hearing that it was improper for Etowah County District Judge Will Clay to issue the December 8, 2016, search warrant because Clay had represented Moore in a separate criminal case. (Doc. 30 in Case No. 4:18-cr-21-CLM-SGC). James filed a 4-page supplemental motion along with two attachments written by Moore. (Doc. 33 in Case No. 4:18-cr-21-CLM-SGC). In his second attachment, Moore asserted that Judge Clay possessed ill will toward him because Moore had complained about Clay's representation in a 2007 state court case. (Doc. 33-2, pp. 6–9 in Case No. 4:18-cr-21-CLM-SGC). Moore also complained that Officer Jacob Entrekin made false statements about the amount of heroin and meth seized at Moore's residence, which led Judge Clay to impose a $200,000 cash bond. (*Id.*, p. 4). Judge Bowdre denied Moore's supplemental motion to suppress finding "no basis in law or fact that the representation of Mr. Moore by Judge Clay in 2007 adversely impacted the issuance of the search warrant in December 2016." (Doc. 36 in Case No. 4:18-cr-21-CLM-SGC).

2. *Trial before Judge Kallon*: Moore's case was then reassigned to Judge Abdul Kallon for trial. (Doc. 37 in Case No. 4:18-cr-21-CLM-SGC). Before Moore's trial began, the Government filed an information notifying Moore that it would seek a sentencing enhancement under 21 U.S.C. §§ 841, 851 if Moore was convicted. (Doc. 16 in Case No. 4:18-cr-21-CLM-SGC). Moore responded to the information by contending that any 21 U.S.C. § 851 findings should be made by the jury beyond a reasonable doubt. (Doc. 48 in Case No. 4:18-cr-21-CLM-SGC). The Government also disclosed the identity of the confidential informant and listed him in the Government's September 12, 2018, anticipated witness list. (*See* Docs. 41 & 43 in Case No. 4:18-cr-21-CLM-SGC). Trial began on September 17, 2018, and lasted two days.

The Government called seven witnesses, including Officer Entrekin, Confidential Informant James Ward, and two chemists from the Drug Enforcement Administration ("DEA"). (*See* Docs. 84 & 85 in Case No. 4:18-cr-21-CLM-SGC). James' cross-examination of the witnesses and closing argument focused on discrediting Ward by asserting that he was a sex offender and known methamphetamine user who was using Moore to make his legal troubles go away. (*See, e.g.*, Doc. 84, pp. 214–15, 245–47; Doc. 85, pp. 175–76, 180 in Case No. 4:18-cr-21-CLM-SGC). James also repeatedly noted that

Entrekin reported to the state court that officers recovered 8.5 grams of heroin from Moore when the DEA chemists later determined that less than a gram of heroin was recovered. (*See, e.g.*, Doc. 85, pp. 178–80 in Case No. 4:18-cr-21-CLM-SGC). According to James, Entrekin fabricated the 8.5 grams of heroin, so Moore's state court charges would be for trafficking heroin and Moore wouldn't be able to make bond. (*See id.*).

The jury found Moore guilty on all counts. (*See id.*, p. 198). But the jury determined that the amount of methamphetamine Moore possessed on December 8, 2016, was less than the 5 grams or more charged in Count 3. (*See id.*). After Judge Kallon read the jury's verdict, James reminded him that she had requested a penalty phase jury trial related to the 851 enhancement. (*Id.*, p. 200). Judge Kallon denied her request based on the Supreme Court's ruling in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). (*Id.*, pp. 201–02).

3. *Sentencing*: In March 2019, Judge Kallon sentenced Moore to 180 months' imprisonment to be followed by 6 years' supervised release. (*See* Doc. 68 in Case No. 4:18-cr-21-CLM-SGC). Moore's motion for downward variance and allocution during the sentencing hearing focused almost exclusively on Moore's allegation that Entrekin intentionally misled the state court to think that Moore had possessed 8.5 grams of heroin to prevent Moore from making bond. (*See* Doc. 61, pp. 2–3; Doc. 86, pp. 16–18 in Case No. 4:18-cr-CLM-SGC). Judge Kallon responded by saying that "Mr. Moore has every right to feel strongly about the alleged misconduct by Etowah County and/or other law enforcement officials. But there was no contrition shown here for the convictions in this case." (Doc. 86, p. 24 in Case No. 4:18-cr-CLM-SGC). Judge Kallon then stated that he found 180 months' imprisonment a reasonable sentence under the relevant § 3553(a) factors. (*Id.*, pp. 27–28).

At the close of the sentencing hearing, Judge Kallon stated that he didn't "see anything that suggests that [Moore] has a drug problem," so he didn't recommend that the Bureau of Prisons provide Moore access to a residential drug treatment program or include as a special condition of Moore's supervised release that Moore participate in drug treatment. (*See id.*, pp. 29, 31–32). But five days after the court entered Moore's original judgment of conviction, the court entered an amended judgment that required Moore to participate in a

4

Substance Abuse Intervention Program while on supervised release. (Doc. 70 in Case No. 4:18-cr-21-CLM-SGC).

4. *Direct appeal*: Moore timely appealed his conviction and sentence, and the Eleventh Circuit appointed Deanna Oswald and Alexandria Darby from the Federal Public Defender's Office to represent Moore on appeal. Oswald and Darby raised three challenges to Moore's conviction and sentence. First, they argued that Moore's conviction for possession with intent to distribute less than 5 grams of methamphetamine should be overturned because the court erred in denying Moore's request to give a jury instruction on the lesser-included offense of simple drug possession. (*See* Doc. 88-1, p. 2 in Case No. 4:18-cr-CLM-SGC). Second, they challenged the court's jury instructions on Moore's felon-in-possession of a firearm charge considering the Supreme Court's recent decision in *Rehaif v. United States*, 588 U.S. 225 (2019). (*See id.*). Finally, they asserted that the court erred in including a Substance Abuse Intervention Program special condition in Moore's amended judgment when that special condition wasn't announced at sentencing. (*Id.*).

The Circuit Court affirmed Moore's convictions but vacated his sentence and remanded for the court to conform its written judgment to its oral sentence. (*Id.*). As for Moore's challenge to his possession with intent to distribute conviction, the Circuit Court agreed with Moore that the court erred in concluding that a lesser-included offense instruction wasn't warranted because simple possession wasn't charged in the indictment and Moore would simply be acquitted if the jury determined that he possessed the methamphetamine for personal use only. (*Id.*, pp. 10–11). But the Circuit nonetheless affirmed the refusal to give the lesser-included offense instruction because it found that no "rational jury could conclude that the methamphetamine in Moore's home was possessed solely for personal use." (*Id.*, p. 15).

The Circuit also found that it was plain error under *Rehaif* for the court to not instruct the jury that § 922(g) required the Government to prove that Moore knew he had been convicted of a crime punishable by more than one year of imprisonment. (*Id.*). But the Circuit Court found that this error did not affect Moore's substantial rights because the record established that Moore knew he was a felon at the time of his firearm offense. (*See id.*, pp. 15–16).

Thus, the Circuit affirmed Moore's felon in possession of a firearm conviction. (*See id.*). Finally, the Circuit determined that the special condition requiring Moore to attend a drug-treatment program while on supervised release conflicted with the oral pronouncement of Moore's sentence. (*See id.*, pp. 16–17). So the Circuit Court remanded "with instructions to conform the written judgment to the oral pronouncement of the conditions of Moore's supervised release." (*Id.*, p. 17).

5. *Section 2255 proceedings*: Moore has timely filed a motion to vacate, set aside, or otherwise correct his sentence. (Doc. 1). Moore's motion raises seven grounds for relief: (1) a policy disagreement with the methamphetamine drug purity guidelines; (2) Judge Clay's authorization of the search warrant violated Moore's constitutional rights; (3) the court erred in refusing to require the Government to disclose the identity of the confidential informant; (4) Officer Entrekin's statements about the 8.5 grams of heroin violated Moore's right to a fair trial; (5) Moore's § 922(g)(1) conviction is invalid because § 922(g)(1) violates the Second Amendment and Moore's indictment didn't allege that Moore knew he was a felon at the time he possessed the firearms; (6) Amendment 821 to the Sentencing Guidelines lowers Moore's guideline range; and (7) the court violated Moore's rights by applying the 21 U.S.C. § 851 enhancement. (*See id.*). Moore's motion acknowledges that he didn't raise grounds one through five or seven on direct appeal but attributes the failure to raise those claims to ineffective assistance of appellate counsel. (*See id.*).

Along with his § 2255 motion, Moore filed an affidavit that expands on his claims and contends that Broome, Oswald, and Darby provided ineffective assistance of counsel. (Doc. 98 in Case No. 4:18-cr-21-CLM-SGC.) Seizing on Moore's references to ineffective assistance of counsel in his affidavit and § 2255 motion, the Government has filed a response construing Moore's motion as raising three claims: (a) an ineffective assistance of appellate counsel claim, (b) an ineffective assistance of trial counsel claim related to the methamphetamine guidelines, and (c) a claim that the court should apply Amendment 821 to lower Moore's sentence. (*See* Doc. 9). Moore has since filed (a) a 75-page reply brief, (b) 16 pages of evidentiary material related to Entrekin's alleged fabrication of evidence, (c) an 8-page supplemental pleading related to grounds one and seven of his motion, and (d) a 7-page reply to the Government's response to his supplemental pleading. (Docs. 15, 16, 18, 24).

## DISCUSSION

This court must liberally construe Moore's pro se filings and has a duty to address "any allegation of a constitutional violation" raised in Moore's § 2255 motion. *See Rhodes v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009). So the court disagrees with the Government's assertion that it should narrowly construe Moore's motion as raising only three claims related to ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and Amendment 821's application to Moore's guideline range. Instead, the court reads Moore's § 2255 motion as raising seven substantive claims for relief and his references to ineffective assistance of appellate counsel as both an alleged constitutional violation and an attempt to avoid a finding that his substantive claims are procedurally defaulted.[2]

The court thus divides its discussion into eight parts. First, the court addresses the allegations in Moore's affidavit that Broome provided ineffective assistance of counsel. (*See* Doc. 98, pp. 3–4 in Case No. 4:18-cr-21-CLM-SGC). Second, the court addresses Moore's allegations related to his policy disagreement with the methamphetamine guidelines, including his claims that trial and appellate counsel were ineffective for not asking for a variance or departure based on this policy disagreement. (*See* Doc. 1, pp. 4–5; Doc. 15, pp. 6–24; Doc. 18, pp. 3–4). Third, the court addresses Moore's claim that Judge Clay's participation in Moore's state court proceedings violated Moore's constitutional rights and that appellate counsel was ineffective for failing to raise this issue with the Eleventh Circuit. (*See* Doc. 1, p. 6; Doc. 15, pp. 25–31). Fourth, the court addresses Moore's claims related to the alleged failure to timely identify the confidential informant and appellate counsel's failure to make this argument on appeal. (*See* Doc. 1, p. 3; Doc. 15, pp. 32–40). Fifth, the court addresses Moore's claim that Entrekin fabricated evidence, including Moore's assertion that appellate counsel was ineffective for not appealing this issue. (*See* Doc. 1, pp. 8–10; Doc. 15, pp. 41–50). Sixth, the court addresses Moore's claims related to his § 922(g) conviction, including his claims that § 922(g)(1) is unconstitutional, the indictment failed to allege that Moore knew of his felon status, and appellate counsel was ineffective for not arguing that it

---

[2] The Government has not argued that Moore has procedurally defaulted any claims, so the court finds that the Government has waived the affirmative defense of procedural default. *See Foster v. United States*, 996 F.3d 1100, 1106–07 (11th Cir. 2021).

was structural error for the indictment to not include the appropriate mens rea. (Doc. 1, p. 10; Doc. 15, pp. 51–61). Seventh, the court addresses Moore's claim that Amendment 821 lowers Moore's guideline range. (Doc. 1, p. 10, Doc. 15, pp. 62–63). And eighth, the court addresses Moore's claims related to application of the 851 sentencing enhancement. (Doc. 1, p. 10; Doc. 15, pp. 64–73; Doc. 18, pp. 5–6; Doc. 24, pp. 2–5).

### A.    Ineffective Assistance of Trial Counsel

In his affidavit, Moore claims that Attorney Broome was ineffective for refusing to adequately investigate Moore's defenses, file any pretrial motions, challenge the Government's evidence, or subpoena the personnel files of the officers who searched Moore's residence in December 2016. (*See* Doc. 98, pp. 3–4 in Case No. 4:18-cr-CLM-SGC). The two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to this claim. *See Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). Under *Strickland*, to show ineffective assistance of counsel, Moore must prove "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (quotations and citations omitted).

Skipping to the second element, the court finds that Moore has failed to show how Broome's allegedly deficient performance prejudiced him. Broome briefly represented Moore from February 15, 2018, to April 25, 2018. Moore then retained James to represent him, and she promptly filed the pretrial motions that Moore wanted Broome to file related to the Government's failure to disclose the identity of the confidential informant, the validity of the December 2016 search and seizure, and Judge Clay's alleged conflict of interest. (*See* Docs. 19, 21, 22, 33 in Case No. 4:18-cr-21-CLM-SGC). James also diligently sought information about Entrekin's disciplinary records and repeatedly argued that Entrekin had fabricated the statement that officers recovered 8.5 grams of heroin. (*See* Doc. 80, pp. 11–12; Doc. 85, pp. 178–80; Doc. 61, pp. 2–3 in Case No. 4:18-cr-21-CLM-SGC). Despite James' arguments, Moore was convicted on all four counts in the indictment and sentenced to 180 months' imprisonment. Thus, the court finds that Moore has failed to show that there's a "reasonable probability that . . . the result of the proceeding would have been different" had Broome made these arguments earlier or more

adequately investigated Moore's potential defenses. *See Strickland*, 466 U.S. at 694. As a result, the court **DENIES** Moore's ineffective assistance of counsel claim related to Broome's representation.

## B.   Policy Disagreement with Methamphetamine Guidelines

Moore's second claim relates to the growing number of district court judges who apply downward variances or departures to the guideline range in methamphetamine cases based on their policy disagreement with how the guideline range is calculated for methamphetamine-related convictions. As these judges point out, U.S.S.G. § 2D1.1(c) divides methamphetamine into two categories: (a) a methamphetamine mixture, and (b) methamphetamine actual (or "Ice"). And in determining a defendant's base offense level, there is a 10:1 ratio between pure or actual methamphetamine and an equivalent weight of methamphetamine mixture. For example, a defendant convicted of trafficking 4 to 5 grams of actual methamphetamine or Ice has a base offense level of 22 while a defendant convicted of trafficking a methamphetamine mixture of less than 5 grams has a base offense level of 12. *See* U.S.S.G. § 2D1.1(c). Thus, the advisory guideline ranges for defendants found trafficking pure methamphetamine tend to be much higher than the guideline ranges of defendants found with a methamphetamine mixture.

But times have changed; it is now rare to find methamphetamine that tests lower than 90 percent pure. *See* U.S. SENT'G COMM'N, METHAMPHETAMINE   TRAFFICKING OFFENSES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 3 (2024), https://www.ussc.gov/sites/default/fi fil/pdf/research-and  publications/research  publications /2024/202406_Meth amphetamine.pdf. So many criminal defendants and judges have expressed "concern that methamphetamine purity is no longer an indication of culpability in the offense" but based solely on whether the Government conducted lab testing in that particular case. *See id.* at 52. Because of these concerns, many judges routinely impose a below-guideline sentence in cases involving actual methamphetamine or Ice.

In calculating Moore's base offense level, the United States Probation Office looked at the amount of methamphetamine actual involved in Moore's offense and determined that the combined drug quantity of methamphetamine

actual, cocaine base crack, cocaine, heroin, and marijuana attributable to Moore's offense resulted in a base offense level of 28. (*See* PSR ¶ 20). According to Moore, "the harsh methamphetamine Guidelines overstate his culpability," so Judge Kallon should have rejected Moore's guideline range on policy grounds. (Doc. 1, p. 4). Moore also asserts that both trial and appellate counsel were ineffective for not making an argument for a variance or departure based on the drug purity issue.

1. *Substantive claim*: Moore's argument that Judge Kallon should have sentenced him to a below-guideline sentence based on policy grounds fails for two reasons. First, an alleged "error of law does not provide a basis for a collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *See United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quotations omitted). And an alleged misapplication of the advisory sentencing guidelines is not a fundamental defect that inherently results in a complete miscarriage of justice unless the § 2255 movant "can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated." *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014) (en banc).

Moore's "motion alleges nothing of the kind." *Id.* He doesn't dispute that Judge Kallon correctly calculated his guideline range or argue that he is actually innocent of the drug charges in the indictment. Instead, he agrees that his guideline range was correctly calculated but argues that Judge Kallon erred by not reducing his sentence to a below-guideline sentence based on a policy argument that the drug quantity guideline for methamphetamine overstates a defendant's culpability. Thus, Judge Kallon's decision to impose a within-guideline sentence did not "result[ ] in a complete miscarriage of justice." *Id.* at 1144 (quotations omitted). And "[b]ecause there has been no 'complete miscarriage of justice,' there can be no collateral review" of Judge Kallon's failure to reduce Moore's sentence based on a policy disagreement with the methamphetamine drug quantity guidelines. *See id.*

Second, while district courts may grant a variance based on a policy disagreement with the applicable sentencing guidelines, they are not "command[ed] . . . to exercise" this discretion and grant a variance in every case involving methamphetamine actual or Ice. *See Dell v. United States*, 710

F.3d 1267, 1279 (11th Cir. 2013). And the record establishes that Judge Kallon's decision to sentence Moore to 180 months' imprisonment on the drug distribution charges was appropriate under the 18 U.S.C. § 3553(a) factors. As Judge Kallon explained, "[d]rug trafficking offenses pose a grave danger to the community." (Doc. 86, p. 27 in Case No. 4:18-cr-21-CLM-SGC). That was especially true here because at least some of the drug distribution occurred in the presence of a small child. (*See id.*; *see also* PSR, ¶ 9 (during the November 2016 transaction Moore was holding an infant)). Thus, the seriousness of the offense, Moore's history and characteristics, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from future crimes all supported the 180-month sentence. (*See* Doc. 86, p. 28 in Case No. 4:18-cr-21-CLM-SGC). Plus, Moore's 180-month sentence was much lower than the 30-year statutory maximum that Moore could have received for Counts 1-3. *See United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016) (A sentence "well below the total statutory maximum" is an "indicator of reasonableness."). As a result, Judge Kallon acted well within his discretion in sentencing Moore to 180-months' imprisonment for drug distribution.

For both these reasons, the court will not grant Moore § 2255 relief on his substantive claim that Judge Kallon erred in not granting Moore a downward variance or departure based on a policy disagreement with the methamphetamine drug quantity guidelines.

2. *Ineffective assistance of trial counsel*: The court will also not grant Moore relief on his claim that trial counsel was ineffective for failing to seek a variance or departure based on the drug purity issue with the methamphetamine guidelines. Again, to succeed on his ineffective assistance of counsel claims, Moore must establish both deficient performance and prejudice. *See Roe*, 528 U.S. at 476–77. And the court finds that Moore has failed to show that there's a reasonable probability that Judge Kallon would have reduced his 180-month sentence if James had asked for a below-guideline sentence based on the drug purity issue.

The court recognizes that Moore has cited several cases in which district courts accepted the drug purity argument and sentenced a defendant to a below-guideline sentence. While this court disagrees with the substantial policy-based variances given by some colleagues, this court has also granted

11

(smaller) downward variances in meth purity cases to avoid the unwarranted sentencing disparities created by the disagreement among district courts on this issue. *See* 18 U.S.C. § 3553(a)(6) (requiring courts to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct").

But Moore's argument is not targeted at the undersigned or the judges who grant policy-based variances; it is focused on Judge Kallon, Moore's sentencing judge. And Moore has offered only speculation that Judge Kallon would have accepted his drug purity argument and sentenced Moore to less than 180-months' imprisonment based on that argument. In fact, the record suggests that Judge Kallon would have sentenced Moore to 180-months' imprisonment even if James had made a methamphetamine purity argument. Judge Kallon explained in detail why he believed an 180-month sentence was appropriate under the § 3553(a) factors. (*See* Doc. 86, pp. 27–28 in Case No. 4:18-cr-21-CLM-SGC). He also noted that he didn't believe a downward variance was warranted because of the strength of the Government's evidence, including a "[c]onfidential buy on video, the search warrant, the drugs that were found, [and] the firearms that were found." (*Id.*, p. 24). Finally, Judge Kallon explained that Moore's conduct stood out to him because he had an infant with him during one of the controlled buys and either transferred or packaged drugs in the infant's presence. (*See id.*, pp. 23–24). So Moore's criminal history, exposure of a child to drug trafficking activity, lack of contrition, and the overwhelming evidence of Moore's guilt led Judge Kallon to sentence Moore at the high end of the guideline range. (*See id.*, pp. 24–25).

Moore has given the court no basis to believe that Judge Kallon's decision would have been different had James made a methamphetamine purity argument at sentencing. Thus, the court will not grant Moore § 2255 relief based on his ineffective assistance of trial counsel claim related to the methamphetamine guidelines.

3. *Ineffective assistance of appellate counsel*: *Strickland*'s two-part test also applies to Moore's claims that he received ineffective assistance of appellate counsel. *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). In reviewing appellate counsel's performance, this court must be "mindful that the Sixth Amendment does not require appellate advocates to

12

raise every non-frivolous issue." *See id.* (quotations omitted). So "[d]eclining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 582 U.S. 521, 533 (2017). And to show prejudice, a movant must establish "that the neglected claim would have a reasonable probability of success on appeal." *Philmore*, 575 F.3d at 1265.

Based on this standard, the court finds that Moore has failed to satisfy either *Strickland* prong for his claim that appellate counsel was ineffective for not raising a claim related to methamphetamine purity on appeal. The claim that Judge Kallon plainly erred in not granting Moore a downward variance based on a policy disagreement with the methamphetamine guidelines is not "plainly stronger" than the claims Oswald and Darby presented to the Eleventh Circuit. *See Davila*, 582 U.S. at 533; *see also id.* ("In most instances, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors."). And Moore probably would not have convinced the Eleventh Circuit that Judge Kallon erred in not granting him a downward variance. As discussed, Judge Kallon explained why the § 3553(a) factors supported Moore's 180-month sentence and district courts aren't required to grant a downward variance based on a policy disagreement with the methamphetamine guidelines. Plus, nothing in the record suggests that Moore's sentence was substantively unreasonable. Thus, the court rejects Moore's argument that appellate counsel was ineffective for failing to raise a methamphetamine purity guideline claim on direct appeal.

—

For all these reasons, the court **DENIES** Moore's claims related to his policy disagreement with the methamphetamine purity guidelines.

## C.   Judge Clay's Alleged Conflict of Interest

Moore next contends that it violated his due process rights for Judge Clay to participate in his state court proceedings because Judge Clay was biased based on how his 2007–2008 representation of Moore ended.

1. *Substantive claim*: Though Moore's state court proceedings were related to his federal charges, the only action by Judge Clay that affects this

case is his signing off on the December 2016 search warrant. So Judge Clay setting Moore's bond at $216,000 or presiding over state court proceedings after Moore's arrest does not support granting Moore § 2255 relief.

As for the search warrant, the Fourth Amendment requires that a "neutral and detached magistrate" determine whether there is probable cause to issue a warrant. *See Johnson v. United States*, 333 U.S. 10, 14 (1948). So "[a] magistrate failing to manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application . . . cannot provide valid authorization for an otherwise unconstitutional search." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quotations omitted). For example, it violates the Fourth Amendment for a judge to have a pecuniary interest in issuing the warrant or to have participated in the police investigation that led to the request for a warrant. *See Connally v. Georgia*, 429 U.S. 245, 251 (1977); *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327–28 (1979).

Nothing in the record suggests that Judge Clay had a financial interest in issuing the December 2016 search warrant. And though Moore speculates that Judge Clay "telescope[d] the process of the application for warrant," (doc. 24, p. 28), he has pointed to no facts that would support this conclusory assertion. Plus, a search warrant isn't invalid just because the judicial officer who signed the warrant previously represented the defendant in a different drug case. *See United States v. Harris*, 566 F.3d 422, 434 (5th Cir. 2009) ("[W]e see no reason to question the neutrality and detachment of a magistrate who happened to have represented the defendant in an unrelated criminal matter six years prior to the issuance of the warrant at issue."); *United States v. Barry-Scott*, 251 F. App'x 983, 992–93 (6th Cir. 2007) (Judge who represented defendants from 1994 to 1995 and was thus generally "aware of their drug activities" did not violate neutral and detached requirement).

Although the validity of the search warrant doesn't turn on whether Judge Clay violated the Alabama Canon of Judicial Ethics, the court also finds that Judge Clay didn't violate the State's judicial ethics requirements. Under Judicial Ethics Canon 3(c), a judge should recuse himself if his "impartiality might reasonably be questioned, including . . . instances where" (a) "[h]e has a personal bias or prejudice concerning a party," (b) he has "personal knowledge of disputed evidentiary facts concerning the proceeding," or (c) "[h]e served as

14

a lawyer in the matter in controversy." Moore has failed to show that Judge Clay remembered his brief representation of Moore in 2007–2008 or harbored personal bias or prejudice against Moore based on how that representation ended. (*See* Doc. 36, pp. 3–4 in Case No. 4:18-cr-21-CLM-SGC). And nothing suggests that Judge Clay had personal knowledge about any of the facts presented to him in the search warrant application. Plus, Moore's 2007 marijuana charge was a different "matter in controversy" than the drug distribution allegations in the search warrant application. So Alabama's Canon of Judicial Ethics did not preclude Judge Clay from presiding over the search warrant application. Nor would Judge Clay have been required to recuse himself under 28 U.S.C. § 455, the federal recusal statute that Moore says the court should apply here. *See United States v. Outler*, 659 F.2d 1306, 1312–1313 (5th Cir. Oct. 26, 1981) (finding that magistrate judge who represented Government at defendant's probation revocation three years earlier didn't violate § 455 by issuing search warrant).

Finally, the court notes that even if Judge Clay failed to satisfy the neutral and detached magistrate requirement, the good-faith exception to the exclusionary rule provides that evidence seized under a defective warrant is admissible if it was reasonable for the officers who executed the warrant to rely on the warrant in conducting their search. *See Leon*, 468 U.S. at 922–23. And here, a reasonable officer would have thought the warrant was a valid warrant supported by probable cause because it was based on two controlled drug buys that were recorded on an audio/video device. Plus, nothing suggests that any officer who executed the warrant knew of Clay's previous attorney-client relationship with Moore or Clay's alleged bias against Moore. So even if the warrant was lacking, the evidence seized during the December 2016 search would have been admissible at Moore's trial.

For all these reasons, the court **DENIES** Moore's claim that his convictions should be vacated because Judge Clay's involvement in his state court case violated Moore's due process rights.

2. *Ineffective assistance of appellate counsel*: Moore also claims that his appellate counsel was ineffective for failing to raise the issue of Judge Clay's bias with the Eleventh Circuit. This claim was not "plainly stronger" than the claims Oswald and Darby presented on appeal. *See Davila*, 582 U.S. at 533.

And had Moore's attorneys raised a Judge Clay-related claim, it would have been rejected because Judge Clay was sufficiently neutral and detached, and even if the search warrant were lacking, the good-faith exception to the exclusionary rule would apply. So the court **DENIES** this claim.

### D.   Disclosure of Informant's Identity

Moore's next set of claims involve the alleged inadequacies in the disclosure of the confidential informant's identity. First, Moore says that the court erred in denying his motions for disclosure under *Roviaro v. United States*, 353 U.S. 53 (1957). Second, Moore contends that the Government disclosed Ward's identity too late, which the court construes as an allegation that the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963). Third, Moore argues that Entrekin and Ward provided false testimony, which the court construes as an allegation that the Government violated *Giglio v. United States*, 405 U.S. 150 (1972). Finally, Moore asserts that appellate counsel was ineffective for not raising these disclosure issues with the Eleventh Circuit.

1. *Alleged Roviaro violation*: The Government enjoys a limited privilege to withhold the disclosure of the identity of confidential informants. *See Roviaro*, 353 U.S. at 59. But "[w]here the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61. Thus, when a defendant moves to compel the Government to disclose the identity of a confidential informant, the court must apply a balancing test that considers these three factors: (1) "the extent of the informant's participation in the criminal activity," (2) "the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant," and (3) "the government's interest in nondisclosure." *See United States v. Guiterrez*, 931 F.2d 1482, 1490 (11th Cir. 1991). It is the defendant's burden to "show that the informant's testimony would significantly aid in establishing an asserted defense." *See United States v. Tenorio-Angel*, 756 F.2d 1505, 1511–12 (11th Cir. 1985).

While represented by Broome, Moore filed a pro se motion for an order compelling the Government to disclose the identity of the confidential informant and produce a bill of particulars. (*See* Doc. 5 in Case No. 4:18-cr-21-

16

CLM-SGC). The magistrate judge struck Moore's motion because he was represented by counsel and filed the motion pro se without leave of court. (*See* Doc. 6 in Case No. 4:18-cr-21-CLM-SGC). When James replaced Broome as Moore's attorney, she filed a renewed motion for disclosure under *Roviaro*, asserting that disclosure of the confidential informant's identity was required because he participated in Moore's alleged criminal offenses. (*See* Doc. 22 in Case No. 4:18-cr-21-CLM-SGC). Judge Bowdre denied the renewed *Roviaro* motion without prejudice to Moore's right to re-raise the motion if there was a change in circumstances. (*See* Docs. 28 & 80, p. 6 in Case No. 4:18-cr-21-CLM-SGC). Moore never filed a renewed motion for disclosure, and the Government revealed Ward's identity in its September 12, 2018, trial brief and witness list, which were filed five days before trial. (*See* Docs. 41 & 43 in Case No. 4:18-cr-21-CLM-SGC).

Moore has not shown that he had a right to disclosure of the confidential informant's identity before the Government filed its trial brief and witness list. "[T]he right to counsel and the right to proceed *pro se* exist in the alternative." *United States v. LaChance*, 817 F.2d 1491, 1498 (11th Cir. 1987). So it was appropriate for the magistrate judge to strike Moore's pro se motion as being improperly filed. Besides, "[m]ere conjecture about the possible significance of [the confidential informant's] testimony is insufficient to compel disclosure." *Guiterrez*, 931 F.2d at 1491. And both Moore's pro se and counseled motions for disclosure merely speculated that the confidential informant's identity would be "helpful to the defense" and "critical for trial preparation" without providing any specifics about how learning the confidential informant's identity would assist Moore in his asserted defenses. Thus, the court did not err in refusing to grant Moore's motions for disclosure. *See id.* 1490–91; *see also United States v. Pineda Castro*, 795 F. App'x 635, 651 (11th Cir. 2019) (affirming denial of motion to compel disclosure of confidential informant's identity when the defendant did nothing more "than speculate that the informant's testimony would be helpful to her defense, without pointing to any indication in the record that supports her theory").

2. *Alleged <u>Brady</u> violation*: Moore also alleges that Ward's late disclosure resulted in a *Brady* violation because James didn't receive impeachment evidence on Ward until the morning of the first day of trial. *Brady* requires the Government "to turn over to the defense evidence that is favorable to the

accused." *United States v. Jordan*, 316 F.3d 1215, 1251 (11th Cir. 2003). And "[i]mpeachment evidence should be disclosed in time to permit defense counsel to use it effectively in cross-examining the witness." *Id.* at 1253.

But the Government's obligations under *Brady* are limited to evidence that is material. So "the government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings." *Id.* at 1252. Impeachment evidence is material if it "is likely to cast doubt on the reliability of a witness whose testimony may well be determinative of guilt or innocence." *See id.* at 1253 (quotations omitted).

Contrary to Moore's assertion, the Government did not wait until the morning of trial to disclose Ward's identity. Instead, as the court has discussed, the Government filed a witness list and trial brief identifying Ward as the confidential informant 5 days before trial. (*See* Docs. 41 & 43 in Case No. 4:18-cr-21-CLM-SGC). Nor does the record support Moore's contention that the Government hid Ward's middle name "Drake" from the defense. To be sure, James referred to Ward as "James Drake Ward" in her opening statements. (*See* Doc. 84, p. 120 in Case No. 4:18-cr-21-CLM-SGC). The Government did, however, apparently wait until the morning of trial to provide James with "a few documents" that included impeachment material related to Ward. (*See id.*, pp. 247–249). So after finishing her cross-examination of Ward, James asked Judge Kallon if Ward could be subject to recall in case "the stuff [the Government] gave [her] . . . led . . . to anything else." (*See id.*, p. 247). Judge Kallon responded that he didn't want to require witnesses to come back but offered to take a break so that James could review the new documents to see if there was anything new in them that James wanted to question Ward about. (*See id.*, pp. 247–48). James responded that it was "no big deal" and that she "didn't have any other questions for" Ward. (*Id.*, p. 248). So Ward's testimony ended without James asking him any further questions. (*See id.*, p. 249).

Moore has failed to show that the Government violated *Brady* by not providing him with this impeachment material until the morning of trial. Even if the Government could have provided these documents earlier, the record does not reveal what these documents disclosed. So the court cannot say that earlier disclosure could have "alter[ed] the outcome of the proceedings."

18

*Jordan*, 316 F.3d at 1252. To be sure, James stated that these new documents were "no big deal." (*See* Doc. 84, p. 248 in Case No. 4:18-cr-21-CLM-SGC). Plus, as Judge Kallon noted, James had already cross-examined Ward and Entrekin about Ward's status as a sex offender, use of methamphetamine, and desire to work with law enforcement to lessen his own criminal troubles. Despite hearing this evidence about Ward's past, the jury found Moore guilty on all four counts. Thus, Moore hasn't established that he's entitled to relief under *Brady*.

3. *Alleged <u>Giglio</u> violation*: Related to Moore's *Brady* violation claim is his claim that the Government allowed Entrekin and Ward to present "known false evidence" when they testified that Ward's only compensation was reimbursement for the cost of gas. (*See* Doc. 15, pp. 37–38). Under *Giglio v. United States*, 405 U.S. 150 (1972), "[i]f false testimony surfaces during trial and the government has knowledge of it, the government has a duty to step forward and disclose." *Ventura v. Atty. Gen., Fla.*, 419 F.3d 1269, 1277 (11th Cir. 2005) (cleaned up). "*Giglio* error is a species of *Brady* error," so "to prevail on a Giglio claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." *Id.* at 1276–77.

There are at least two problems with Moore's *Giglio* argument. First, Moore's claim is that Entrekin and Ward's testimony was "clearly inconsistent" with Entrekin's restitution affidavits for the two controlled buys, which shows that Entrekin spent $20 on an "informant fee" during each buy. (*See* Docs. 77-5, and 77-6 in Case No. 4:18-cr-21-CLM-SGC). But this asserted $20 expenditure is not inconsistent with Entrekin and Ward's testimony that Ward was only reimbursed for his gas. Instead, the most likely explanation is that $20 was what Ward was paid for gas money. Thus, Moore hasn't established that the Government knowingly presented false testimony. *See Ventura*, 419 F.3d at 1277. Second, the Government didn't fail to disclose the existence of the $20 informant fees. To the contrary, the Government disclosed the existence of these fees several months before trial as Moore offered Entrekin's restitution affidavits as exhibits during the June 19, 2018, suppression hearing. (*See* Docs. 77, 77-5, and 77-6 in Case No. 4:18-cr-21-CLM-SGC). As a result, the court rejects Moore's claim that the Government violated *Giglio*.

19

4. *Ineffective assistance of appellate counsel*: Moore's final claim related to the Government's alleged inadequate disclosures is that appellate counsel was ineffective for not raising these disclosure issues with the Eleventh Circuit. Moore's claims that the Government violated *Roviaro*, *Brady*, and *Giglio* were not "plainly stronger" than the claims Oswald and Darby presented on appeal. *See Davila*, 582 U.S. at 533. And as explained, Moore has failed to show that he's entitled to relief on any of his disclosure-related claims. So Moore has failed to establish prejudice. As a result, the court rejects Moore's claim that appellate counsel was ineffective for not appealing the denial of Moore's *Roviaro* motions or the alleged *Brady* and *Giglio* violations that Moore has asserted for the first time in this § 2255 proceeding.

—

For all these reasons, the court will **DENY** Moore's claim for relief related to the Government's alleged inadequate disclosures.

### E.   Alleged False Statements by Law Enforcement

Moore's fifth claim relates to his allegation that Entrekin (and to some extent Officer Tara Bates) falsified evidence that officers recovered 8.5 grams of heroin from Moore's residence. According to Moore, Entrekin told the state court that officers found 8.5 grams of heroin so that Moore's state court charges would be for possessing a trafficking amount of heroin and Moore wouldn't be able to make bond. Moore claims that Entrekin's creation of false evidence denied him his constitutional right to a fair trial and that appellate counsel was ineffective for not bringing this issue to the Eleventh Circuit's attention.

1. *Substantive claim*: The Sixth Amendment guarantees criminal defendants the right to a fair trial. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 551 (1976). And "a conviction obtained through use of false evidence, known to be such by representatives of the State" violates a defendant's right to due process. *See Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959).

Moore has failed to show that Entrekin's initial statements to the state court violated Moore's right to a fair federal trial or undermined his federal court convictions. The federal government never accused Moore of possessing 8.5 grams of heroin. Moore's indictment charged him with possessing with

20

intent to distribute only "a mixture and substance containing a detectable amount of heroin." (Doc. 1, p. 2 in Case No. 4:18-cr-21-CLM-SGC). And the Government freely admitted at trial that the DEA lab test results showed that officers had recovered less than a gram of heroin. Nor is there any evidence that federal prosecutors relied on Entrekin's statements that the heroin weighed 8.5 grams in deciding to charge Moore or when bringing his case before a grand jury. The record instead shows that DEA testing of the suspected heroin occurred in June 2017, which was around six months before the grand jury returned Moore's federal indictment. (*See* Doc. 51-11, in Case No. 4:18-cr-21-CLM-SGC). Thus, Entrekin's assertion in state court that the heroin weighed 8.5 grams had little relevance to Moore's federal charges.

Despite the limited relevance of the initial claim that the heroin weighed 8.5 grams, James cross-examined Entrekin at length about this statement to undermine his credibility with the jury. (*See* Doc. 84, pp. 198–205 in Case No. 4:18-cr-21-CLM-SGC). James then argued in closing that Entrekin "made a very serious mistake with regard to the 8.5 grams" and implied that this mistake may be the reason he's no longer a task force officer. (*See* Doc. 85, p. 182 in Case No. 4:18-cr-21-CLM-SGC). She added that it was "laughable" for Entrekin to claim that the heroin weighed 8.5 grams and "sad" that Entrekin didn't go back and ask the state court to drop Moore's trafficking heroin charge. (*See id.*, pp. 178–79). The Government responded by acknowledging that officers recovered less than a gram of heroin but asserted that it didn't "matter how much heroin there was" and that the heroin was mixed with non-controlled substances, which is what likely caused Entrekin to think the heroin weighed more than it did. (*See id.*, p. 167). So the jurors understood that Entrekin's initial statement that the heroin was 8.5 grams was inaccurate, and they were free to consider this inaccuracy in assessing Entrekin's credibility. As a result, Moore has failed to show that Entrekin's allegations in state court deprived him of his rights to a fair trial or due process with respect to his federal charges. To the extent that Moore contends that Entrekin's statements injured him by causing the state court to wrongly detain Moore from December 2016 to February 2018 or maliciously prosecute Moore for trafficking heroin, the court cannot remedy those alleged harms in this § 2255 action. *See Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006). The court will thus **DENY** Moore's substantive false evidence claim.

21

2. *Ineffective assistance of appellate counsel*: The court also **DENIES** Moore's ineffective assistance of appellate counsel claim. As discussed, the initial assertion that Moore possessed 8.5 grams of heroin had little relevance to Moore's federal charges, so Moore's claim that the Government used Entrekin's false statements to convict him was not "plainly stronger" than the claims Oswald and Darby presented on appeal. *See Davila*, 582 U.S. at 533. Nor has Moore established a reasonable probability that the circuit court would have ruled in his favor on this issue. So the court will not grant Moore relief on either claim related to the initial state-court allegations that officers recovered around 8.5 grams of heroin.[3]

### F.    Validity of 18 U.S.C. § 922(g) Conviction

Moore's sixth challenge is to his § 922(g) conviction. Moore first asserts that 18 U.S.C. § 922(g)'s ban on felons possessing firearms violates the Second Amendment. Moore next says the court should vacate his § 922(g) conviction because the indictment failed to allege that Moore knew he was a felon as required by 18 U.S.C. § 924(a). Finally, Moore argues that appellate counsel was ineffective for not arguing on appeal that the defect in Moore's indictment was a jurisdictional defect that resulted in structural error.

1. *Constitutionality of § 922(g)*: Binding Eleventh Circuit precedent forecloses Moore's claim that his § 922(g)(1) conviction violated the Second Amendment. *See United States v. Dubois*, 139 F.4th 887, 894 (11th Cir. 2025). And neither *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), nor *United States v. Rahimi*, 602 U.S. 680 (2024), have abrogated this precedent. *See Dubois*, 139 F.4th at 888–89. So the court rejects Moore's argument that it should vacate his § 922(g) conviction on Second Amendment grounds.

---

[3] As shown above, the Government did not allow the statement that officers recovered 8.5 grams of heroin to go "uncorrected" at trial or "adopt" this allegedly fabricated evidence. (*See* Doc. 1, p. 10). Nor does the record support Moore's assertion that the Government committed fraud upon the court, relied on "fruits of the poisonous tree," or used fabricated evidence that stripped this court of subject matter jurisdiction over Moore's criminal charges. (*See id.*). So if these allegations in Moore's motion raise discrete claims for relief related to Entrekin's state court statements, the court also rejects these claims as refuted by the record.

2. *Rehaif error in indictment*: Binding precedent also forecloses Moore's argument that the indictment's failure to allege that Moore knew of his felon status was a jurisdictional defect that resulted in structural error. *See United States v. Moore*, 954 F.3d 1322, 1336–37 (11th Cir. 2020). Instead, Moore's challenge to his indictment under *Rehaif v. United States*, 588 U.S. 225 (2019), is subject to plain error review. *See United States v. Elysee*, 993 F.3d 1309, 1345 (11th Cir. 2021).

Though Moore's appellate counsel did not argue on direct appeal that the indictment's omission of an allegation that Moore knew of his felon status invalidated Moore's § 922(g) conviction, they did argue that the court's failure to instruct the jury on this element meant that Moore's felon-in-possession conviction should be vacated. Applying plain-error review, the Circuit Court found that "Moore cannot show that any *Rehaif* error affected his substantial rights." (*See* Doc. 88-1, p. 16 in Case No. 4:18-cr-21-CLM-SGC). As the Circuit Court explained, the record establishes that Moore (1) stipulated to his felon status at trial, (2) had several felony convictions, and (3) had two convictions from 1998 that resulted in incarceration for over eight years. (*See id.*). The Circuit Court's analysis applies equally to Moore's claim that his indictment was defective under *Rehaif*. So the court will not vacate Moore's § 922(g) conviction based on the indictment's failure to allege that Moore knew of his felon status.

3. *Ineffective assistance of appellate counsel*: Moore's final challenge to his § 922(g) conviction is that appellate counsel was ineffective for not raising arguments about the defect in his indictment. As explained, binding precedent forecloses Moore's argument that the lack of a knowledge of felon status allegation in the indictment was a jurisdictional or structural error. And the Circuit Court determined that "Moore cannot show that any *Rehaif* error affected his substantial rights." (*See id.*). So Moore has shown no prejudice from appellate counsel's failure to make this argument.

—

In sum, the court **DENIES** each of Moore's claims that his § 922(g) conviction was invalid.

23

### G.    United States Sentencing Guidelines Amendment 821

Moore's next ground for relief is that the court should retroactively apply Part C of Amendment 821 to the United States Sentencing Guidelines to reduce his sentence. As explained when discussing Moore's policy disagreement with the methamphetamine guidelines, an alleged guideline calculation error "does not provide a basis for a collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *See Addonizio*, 442 U.S. at 185 (quotations omitted). And it is not a miscarriage of justice for Moore not to benefit from changes made to the Sentencing Guidelines several years after the resolution of his case. The court thus **DENIES** this claim for relief.[4]

### H.    Alleged Violations related to 851 Enhancement

Moore's final claim challenges his 851 sentencing enhancement. The baseline penalties for unlawfully possessing with intent to distribute controlled substances in schedule I or II of the Controlled Substances Act are found in 21 U.S.C. § 841(b)(1)(C). Moore was sentenced under this provision because the jury found that he possessed less than 5 grams of methamphetamine.

Under § 841(b)(1)(C), a defendant's statutory maximum sentence is increased from 20-years' imprisonment to 30-years' imprisonment if he committed his drug offense "after a prior conviction for a felony drug offense has become final." *See* 21 U.S.C. § 841(b)(1)(C). A defendant with a previous "felony drug offense" conviction must also serve a 6-year supervised release term following his incarceration. *See id.* To obtain this sentencing enhancement, the Government must before trial file an information with the court "stating in writing the previous convictions to be relied upon." *See* 21 U.S.C. § 851(a)(1).

---

[4] The court notes that Moore has moved for a sentence reduction based on Amendment 821 in his closed criminal case. (*See* Doc. 99 in Case No. 4:18-cr-21-CLM-SGC). Moore's motion for sentence reduction under 18 U.S.C. § 3582(c) is the appropriate vehicle for Moore to bring his claim that his sentence should be reduced under Amendment 821, so the court will address the merits of Moore's Amendment 821 argument in ruling on that motion.

A defendant may challenge any allegation in an information of conviction before sentencing. 21 U.S.C. § 851(b), (c)(1). If he does so, the court must hold a hearing under 21 U.S.C. § 851(c)(1). "The hearing shall be before the court without a jury and either party may introduce evidence." *Id.*

As § 851 requires, the Government filed a notice of information before Moore's trial stating that it intended to seek a sentencing enhancement based on Moore's convictions for (a) possession of a controlled substance in DC-2012-128.00, (b) possession of marijuana first degree in CC-2010-353.02, (c) possession of a controlled substance in CC-2010-353.01, (d) possession of marijuana first degree in CC-1996-1294.02, (e) possession of cocaine in CC-1996-1294.01, and (f) possession of a controlled substance in CC-1995-1102.02 and CC-1995-534.01. (Doc. 16 in Case No. 4:18-cr-21-CLM-SGC). Moore filed a response that didn't challenge any of the allegations in the information but argued that the fact of his prior convictions should be decided by a jury. (Doc. 48 in Case No. 4:18-cr-21-CLM-SGC). The court rejected Moore's argument that the jury must decide the facts related to the 851 enhancement, accepted probation's findings that the 851 enhancement applied, and sentenced Moore to terms of 180 months' imprisonment and 6 years' supervised release.

According to Moore, it violated his Sixth Amendment right to a jury to enhance his sentence without having a jury make the findings necessary for the enhancement. In his reply brief, Moore also contends that the court violated 21 U.S.C. § 851(c)(1) by not holding a hearing on Moore's response to the Government's § 851 information. Moore's reply brief also suggests that the court erred in applying the 851 sentencing enhancement because he was sentenced a few months after the enactment of the First Step Act, which restricts the type of prior convictions that make a defendant eligible for an 851 enhancement. Finally, Moore asserts that appellate counsel was ineffective for not challenging the 851 sentencing enhancement on appeal. The court addresses Moore's substantive claims in reverse order and then addresses his ineffective assistance of counsel claim.

1. *First Step Act*: Moore has failed to show that his 851 sentencing enhancement violated the First Step Act. As discussed, Moore was sentenced under 21 U.S.C. § 841(b)(1)(C) because the jury found that the Government failed to prove that Moore possessed 5 grams or more of methamphetamine. Moore was not sentenced under 21 U.S.C. §§ 841(b)(1)(A) or (B), which require higher penalties when a defendant is found to have possessed specific quantities of drugs. And while the First Step Act amended "the types of crimes that qualify for a sentencing enhancement" under §§ 841(b)(1)(A) and (B), the First Step Act "did not change the language of" § 841(b)(1)(C). *See United States v. Defilipps*, 174 F.4th 1291, 1308 (11th Cir. 2026). So both before and after the First Step Act, Moore could receive an 851 sentencing enhancement if he had previously been convicted of a "felony drug offense." *See* 21 U.S.C. § 841(b)(1)(C). A felony drug offense is "an offense that is punishable by imprisonment for more than one year . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *See* 21 U.S.C. § 802(44). Thus, even though the previous convictions used to enhance Moore's sentence were simple possession convictions, those convictions qualified for an 851 enhancement under §§ 802(44) and 841(b)(1)(C). As a result, the court rejects Moore's argument that his sentencing enhancement was invalid because the First Step Act altered which convictions qualified for the 851 enhancement.

2. *Failure to hold a hearing*: Moore next asserts that Judge Kallon erred in not holding a hearing on his response to the Government's information. Under 21 U.S.C. § 851(c)(1), "[t]he court shall hold a hearing to determine any issues raised by the [Defendant's] response which would except the person from increased punishment." But for two reasons, the court rejects Moore's argument that he's entitled to relief on his claim that a hearing was required.

First, unlike the typical response to an 851 enhancement, Moore's response did not challenge the validity of any of his underlying convictions or assert that these convictions didn't meet the definition of a "felony drug offense." (*See* Doc. 48 in Case No. 4:18-cr-21-CLM-SGC). The response instead asserted that Moore had a Sixth Amendment right for a jury to decide whether the 851 enhancement applied and requested a bifurcated trial on the 851 enhancement. (*See id.*). This response did not raise any issues that would "except [Moore] from increased punishment." *See* 21 U.S.C. § 851(c)(1). So

26

under these circumstances, the court finds that it didn't violate § 851(c) to not hold a hearing.

Second, the failure to comply with § 851's procedures is subject to harmless error review. *See United States v. James*, 642 F.3d 1333, 1341–42 (11th Cir. 2011); *see also United States v. Cawthorn*, 149 F. App'x 926, 929 (11th Cir. 2005). And any error in failing to hold a hearing on Moore's response was harmless because, as the response admitted, binding precedent foreclosed Moore's argument that a jury must decide the "fact of a prior conviction." (*See* Doc. 48, pp. 2–5 in Case No. 4:18-cr-21-CLM-SGC). Thus, Moore isn't entitled to § 2255 relief on his claim that the court erred in failing to hold an evidentiary hearing on his response to the Government's information.

3. *Alleged Sixth Amendment violation*: Moore's final substantive 851 enhancement challenge alleges that it violated his Sixth Amendment right to a jury trial for a judge to decide that the enhancement applied.[5] The court disagrees. Typically, "any fact that increases the penalty for a crime must be proved to a jury." *See Erlinger v. United States*, 602 U.S. 821, 837 (2024) (quotations omitted). But a judge may "undertake the job of finding the fact of a prior conviction." *See id.* So a jury isn't required if a sentencing enhancement only requires a judge to identify the defendant's "previous convictions and the legal elements required to sustain them." *See id.* at 838.

Again, Moore was subject to the 851 enhancement if he had previously been convicted of "an offense that is punishable by imprisonment for more than one year . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *See* 21 U.S.C. §§ 841(b)(1)(C), 802(44). So all the court had to do to determine whether the sentencing enhancement applied was look at Moore's previous convictions and determine whether they were felony convictions for offenses that either prohibited or restricted drug use. The court thus finds that it was the role of the court, not the jury, to consider the nature of Moore's prior convictions and determine whether they were the type of convictions that could lead to an 851

---

[5] Moore also contends that the court should have asked the jury whether his underlying convictions were committed on "separate occasions." But Moore was not sentenced under the Armed Career Criminal Act, and no "separate occasions" finding is required to impose a sentencing enhancement under 21 U.S.C. §§ 841(b)(1)(C), 851. So this argument lacks merit.

enhancement. *See United States v. Greer*, 440 F.3d 1267, 1274–75 (11th Cir. 2006) (discussing this principle in Armed Career Criminal Act case).

In any event, "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." *United States v. Perez*, 86 F.4th 1311, 1319–20 (11th Cir. 2023). So Moore is wrong to assert that the court lacked jurisdiction to apply the 851 enhancement or that application of the enhancement requires the court to vacate his sentence. Instead, any error in Moore's sentence is harmless if "uncontroverted evidence" supports the statutory facts that "alter[ed] the range of possible sentences [Moore could] receive." *See id.* at 1320.

Moore does not dispute that he has previous convictions for possession of marijuana, possession of controlled substances, and possession of cocaine. Nor has he contested the validity of these state court convictions. And no reasonable jury could conclude that these convictions weren't for offenses that "prohibit[ed] or restrict[ed] conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." *See* 21 U.S.C. § 802(44). A reasonable jury also couldn't conclude that these offenses weren't "punishable by imprisonment for more than one year." *See id.* Moore was sentenced to 12 years' imprisonment for his convictions for possession of marijuana first degree in CC-1996-1294.02 and possession of cocaine in CC-1996-1294.01. (PSR, ¶ 39). And in none of the other qualifying convictions that the Government identified was Moore sentenced to less than 5 years' imprisonment. Thus, even if the court should have submitted the 851 sentencing enhancement issue to the jury, the failure to do so was harmless beyond a reasonable doubt. *See Perez*, 86 F.4th at 1320. As a result, the court will not grant Moore relief on his claim that the court erred in not having the jury decide whether the 851 enhancement applied.

4. *Ineffective assistance of appellate counsel*: Moore's ineffective assistance of appellate counsel claims related to the 851 enhancement also fail. Moore's arguments about the 851 enhancement were not "plainly stronger" than the claims Oswald and Darby presented on appeal. *See Davila*, 582 U.S. at 533. And there is no reasonable probability that the Circuit Court would have vacated Moore's sentence based on the 851 enhancement arguments Moore has made in his § 2255 filings.

28

—

For all these reasons, the court **DENIES** Moore's claims related to application of the 851 sentencing enhancement.

## EVIDENTIARY HEARING

A § 2255 petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015). But no evidentiary hearing is required if "the § 2255 motion and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* (quotations omitted). As explained above, the records in Moore's criminal case establish that he isn't entitled to relief on his § 2255 claims. So the court will deny Moore's motion without holding an evidentiary hearing.[6]

## CONCLUSION

For these reasons, the court will **DENY** Moore's motion to vacate, set aside, or otherwise correct his sentence (doc. 1) and **DISMISS** this case **WITH PREJUDICE**. The court will **DENY AS MOOT** Moore's motion to urge judgment (doc. 25).

Rule 11 of the Rules Governing § 2255 Proceedings requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* Rule 11, Rules Governing § 2255 Proceedings. The court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, a "petitioner must demonstrate that a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). The court finds that Moore's claims fail to satisfy either standard. So the court will not issue a certificate of

---

[6] The court will address Moore's renewed motion for discovery (doc. 97 in Case No. 4:18-cr-21-CLM-SGC) in an order in Moore's criminal case.

appealability. The court will enter a separate final order that carries out this ruling and closes this case.

**Done** on June 22, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE